Good morning, council. The first case is Fournie v. Fournie, 5090237. We have Mr. Ryan for the appellant and Mr. Bassett for the appellate. Mr. Ryan. Please report, counsel. I represent the plaintiff, appellant Kenneth Fournie, and please allow me to tell the court what we're not here about. We are not here, justices, to dispute the credibility determination made by arbitrator Scheer and the arbitration below. We're not here to dispute the fact, because it is essentially undisputed, that these partners absolutely do not get along anymore and they cannot do business anymore. We're not here to dispute the arbitrator's decision, even, that my client owes his partner's money that was taken as an offset off his award of $945,000. We're here to admit that there is a high standard of appellate review of these arbitration awards, even though it is somewhat surprising to know that de novo review is appropriate in these cases, as the defendants admit in their brief, to many issues relevant in this case. Number one, the de novo standard is applicable to the plaintiff's argument that the award is incomplete. That is by statute. The de novo standard applies to this court's decision in this case as to whether a contractual term was ignored by the arbitrator. We point out that the defendants admit that standard in their brief. And the de novo standard applies to whether the arbitrator exceeded his authority and the defendants admit that in their brief. And finally, that de novo standard, which is a question of law for you justices, applies to the issue of whether a party was not allowed to present relevant evidence at the arbitration hearing. That is the water pipe extension case cited in Mr. Bass's brief. But the plaintiff is here to contend, and we're here because we allege that the award contains two arithmetic errors totaling $11,082, and that argument of ours in our brief is not seriously contested in the defense brief to their credit. And we also are here because we believe the award must be vacated as a matter of law pursuant to the Uniform Arbitration Act because it is incomplete on its face in four ways, three of which are very important and one of which is not as important. Number one is that the contract mandated in paragraph 11 of the partnership contract from July of 1993 signed by the original four partners that on a buyout or retirement or death of a partner that the remaining partners are to buy the proportional share of the retiring partner's interest in grain and livestock in the company, in the firm. That's in paragraph 11. Zero amount was awarded by Mr. Scheer to my client for that. So we did present unrebutted expert testimony, although there was cross-examination, by Mr. Cole of his valuations of the grain bins that was unsold as of the date of the hearing. I believe he testified in March of 2008. And this testimony was discounted by our creditor, Scheer. We are not here to contest his credibility and determination of the expert. The defense, meaning the partners who were the defendants here, the claimants in the arbitration, did not present any testimony as to what the grain in the bins and the cattle were worth. However, there's our contention here that the defendants violated Mr. Scheer's discovery order, where he ordered orally in a phone conference with Mr. Bassett and I, it's all in the record, on the 21st of February, 2008, for the defendants to make full financial disclosure in those two weeks before the March 3rd first day of multiple hearings. The defendants have never produced to the plaintiff or the arbitration any records to document how much grain was in the bins, how much it was sold for, let's say the following year after the valuation date of December 31st, 2007. And they never gave us any documentation of what the inventories of the grain or livestock were. And we are alleging that Arbitrator Scheer exceeded his authority simply by not enforcing his own discovery orders, which would be unheard of in a circuit court. That's the first way we allege the award is incomplete and thus failing, defecting. The second way is that, very simply, the award did not give my client any amount, much less than one-third amount, of cash on hand in the bank accounts of the firm as of the dissolution date that the Arbitrator Scheer used, which was December 31st, 2007. Mr. Panforni wanted a later dissolution date. The fact that Arbitrator Scheer picked that date is not in contest here. We do not have the ability to contest that. What was the reason Arbitrator Scheer did not and really could not give us the first bank accounts or one-third of the bank accounts? And that's because the defendants never had produced one bank statement that would show us how much was in the account at any time, much less as of the end of December 2007. And I would challenge my opponent to come up here and explain to the court why that wasn't done. Because certainly Arbitrator Scheer, confident in many respects, as Your Honors have probably seen if you've looked at this record, would definitely have awarded my client one-third of the amount of the cash on hand had that evidence been produced to us. So not only is the award incomplete there, Your Honors, but also the failure of the defense to produce that critical document to us did not allow us to put on the case in a very simple, straightforward manner. I'm sure the justices are familiar with the law that says if the award is incomplete, this is in the 7-11 case and I believe the Sloan case, the entire award must be vacated. Now maybe that's harsh, but it is the law in the state of Illinois in the defense and we have to live with it. Also importantly, the award did not contain the standard buyout indemnity and whole partners language that we would expect in any buy-sell agreement when it's concluded. In terms of over a quarter million dollars that Kenneth Horney owes as he sits here right now because he signed for $356,000 in mortgage notes, promissory notes, to buy the three farms from their parents' trust. A quarter million dollars, $253,000, was owed just as of 2006, including $44,000 in interest that was unpaid and then the rest of that $253,000 figure, which is the balance there, is in principle. And the managing partner, Mr. Bassett's client, James Horney, admitted under oath that no payments have been made on these mortgages or notes since 2004. So this apparent defect, by not having the indemnity whole partner standard language in the award, exposes my client, and I'll explain it a little further in a second, to joint and several liability on what is an exceeding $253,000 in mortgage debt and note debt that this award does not get him off the hook for. So if the award had simply stated, well, because Mr. Kenneth Horney is being bought off for his interest in the land, therefore, the remaining partners shall identify and hold him harmless on these notes and mortgages, we would not be standing here making this argument. But if the arbitrator did that, wouldn't that violate the terms of the trust that they acquired this partnership from, from the parents? In my opinion, no, because then you're just dealing with the obligations of the three brothers between themselves. So that way, my client would get sued by the trust, and I agree with you. Anything we do here cannot affect the trust rights. That gives my client a clear defense in the suit on the notes that I believe is coming because of the testimony. The note he partly swore in a trial, including the trustee, Mary Jo Defoe, my client's sister, testifying that these notes are in default, they have been placed in collection, and no payments have been made, no forth. And why would James Horney, the managing general partner, say that no payments have been made since 2004? Quote, lack of money, unquote. And that is important in the rest of our arguments for reversal because it is our contention that dissolution is mandated when the economic purposes of the partnership are being unreasonably frustrated, and that is because the proof is that the organization cannot pay its basic bills. For James Horney to pay salaries to his brother, Joe, who spends $35,000, $36,000 a year, and some slight profits every year, and still owing over a quarter million dollars in the basic obligation to the farm, we would express the thought to you, Your Honor, that's not a going concern anymore. For them to sit there and act like an arbitrator to say that this is a profitable venture flies in the face of the evidence, on the face of the award, in that it would be like a homeowner saying, well, I'm meeting all my bills, I'm doing fine, but I can't make my house payment. Well, he's not going to be a homeowner very long, at least not until the foreclosure happens. So if my client is sued on the notice, which right now Joe Horney, who is a defendant here, is one of the trustees of one of the parents' trusts, I think his mom's trust, he, of course, would be in the unique position of maybe suing himself. My client right now has no protection in the suit of the note, and that's important because if, in fact, the judge would be entering against him in the next few months or years on that, he, in fact, is not then receiving his true one-third of debt that he's owed under the buyout clause of the contract, and that is a fatal defect here. So the only way that my client can be guaranteed that he would not be subject to a large judgment on joint seller liability on these unpaid notes is, number one, a liquidation sale and dissolution, if ordered by this court, to extinguish those debts and get him off the hook, or if the award could be modified between the brothers that says that if there's a lawsuit, the two defendants would have to identify the plaintiff, and that would be standard. The fourth way the award is incomplete, and this is relatively minor compared to the other three, is that there has never been any accounting for $1,500 that was paid by an independent witness to James Forney for firm truck, and James said, well, the money ended up in the firm account, but we've never received any bank records to show that deposit. So we've given the court authority that if this award is incomplete, it must be vacated, and that is the 7-11 case. Judge O'Malley's order in the trial court in this case, in which he denied us our motion to vacate the award, is very concerning, and it says that the April 2nd award of Judge O'Malley says, quote, although many allegations of questionable partnership practices appear unresolved, this court cannot conclude that Mr. Scheer intentionally disregarded the law. I'm going to deal with the latter comment of Judge O'Malley in a second, Your Honor. But the fact that the trial court believed himself that some of the issues were unresolved should be very instructive to this court, and we are glad that Judge O'Malley, even though he denied the belief, was as candid as he was in that board. However, when Judge O'Malley said that the court cannot conclude that the arbitrator intentionally disregarded the law, we believe we can show that he did. Number one, we have shown the briefs that Mr. Scheer did not enforce his own discovery order to the detriment of my client, without any excuse from the other side. You can read their brief. I read it again over the weekend. There's nothing in there about that. Number two, Mr. Scheer issued an incomplete award for the four reasons that we've given, and he refused to follow the law on breach of fiduciary duty and mandatory dissolution. If one looks at the award on the face of the award, Your Honor, on page 15 and 16 of the award, the arbitrator did acknowledge tacitly that there was a breach of fiduciary duty committed by James Forney to my client, in that there is a $14,000-plus credit to my client that he received because there was a trade-in by the defendants of a firm planter and a firm mulch finisher for equipment bought by James and Joseph Forney. So because my client is receiving a third of that money that they had realized from a trade-in that belonged in firm accounts, not in their own pocket with getting new equipment, that is a condition by the arbitrator that there was an automatic breach of fiduciary duty, i.e. self-dealing, committed by the managing partner. The second part of the face of the award that shows breach of fiduciary duty is the fact that we didn't learn until the months-long hearings, probably four or five days of hearings, from March of 08 until June of 08, we didn't know until we got some letters in, finally, that $33,000 was paid out of firm monies to the defense lawyer and his law firm in this case. Now, my client is receiving compensation for that. He's getting $11,305, but once again, the record shows there was no vote of the partners as to whether or not they would have their attorney's fees paid with partly this gentleman and their adversary's money, and there is no evidence in the record at all that Kenneth had any of his own extensive attorney's fees since 06 in this case, which is how long he's been on file, paid by the firm. So while there are findings of breach of fiduciary duty here, Mr. Scheer ignored that when he issued a decision saying no dissolution. Of course, dissolution is called for, and it's called for by statute. In fact, it's mandatory. Section 801 of the Illinois Uniform Partnership Act says that the dissolution is warranted if the business is not making money anymore, which means in this case the firm can no longer pay its basic obligations of paying a monthly mortgage to their own parents' trust, and also in subsection 2 of 801, that a partner by his conduct made it not reasonably practical to do business with that partner without a reward if he was at fault. We'll look at this case here. The other side says that Ken has engaged in misconduct, and the arbitrator seemed to recognize that by saying that Ken owed some money to the other side, and the record is replete with multiple breaches of fiduciary duty at the hands of the defendants geared toward my client as the minority partner, and certainly a breach of fiduciary duty as found by Scheer implicitly would justify Part 2, and that is that the partner has not made it reasonably practical to carry on the business with that partner. That means there's a dissolution under the statute, not just, well, who would want to take over and buy off the rest? In fact, if there's a liquidation sale, there's nothing on the face of the earth that would stop these two defendants from paying two-thirds of market price, with my client getting the rest, to buy back the farms if that's what they want to do. In terms of the breaches of fiduciary duty- But didn't the arbitrator specifically find that the partnership was profitable? He did, and we're saying on the face of the order that is a mistake, when he also realizes that in 06 there was $253,000 in default on the mortgages. That's what we believe is the facial error of the award on the failure to dissolve the company. Did he value the land against the mortgage debt? Well, but the point is the partnership cannot pay that debt, so whether he did or not is irrelevant because the partnership needs to pay this on a monthly basis, otherwise all this is going to go in default, at least under the law. The other breaches of fiduciary duty in the record that is not argued at all in the defendant's brief are that there was payment to the two partners, the defendants of salary and profit, when Ken was getting nothing ever since 2004, a lockout of Ken that is admitted in the record in February of 07, and all the other misconduct in the record that goes unrebutted in the other side's briefs at trial, in the arbitration court, or otherwise. In terms of other reasons ignored by Mr. Scheer that would have justified disillusion on the award's face, the defendant's spending firm money to defend this lawsuit with Ken left to pay his own counsel is on the face of the award. It's in evidence not on the face of the award, another defect that should have been mentioned, that the defendants, the record shows, the defendants spent firm money to pay for insurance for their own vehicles that were not firm vehicles. That is an absolute, simple breach of fiduciary duty. James, the record shows, admitted that he placed idle to a firm asset in his own name, it was an old truck, and he represented under oath the Secretary of State, quote, I am the sole owner of Fourney and Sons Farms, that's in the record. James and Joseph's breach of fiduciary duty in pocketing all the grain and cattle sale money from the 07 award, and of course there was fertilizer and pesticide and other materials purchased in 07 with my client's money, used to grow crops in 08 that was not recognized in the award. Of course, I've already mentioned that James and Joseph pocketed all the profit from 05 to 08 until Mr. Scheer stopped them, and that's on the face of the award that my client was awarded some profits from 05 until 08. Of course, it's in the award that the defendants had traded in equipment for their own equipment, and the final reason why this allusion was called for and is required is this intentional failure to account for really any monies to my client outside of computer-generated ledgers. A refusal to make full financial disclosure to the plaintiff like Mr. Scheer had required. So in terms of what my client is asking for, Your Honors, his prayer would be as follows. Number one, and it's in the alternative, is for this court to reverse and vacate the award in Judge O'Malley's order, denying the motion to vacate, and order Mr. Scheer, the same arbitrator, to supervise a formal accounting in full production by the defendants of these financial documents that are missing in order for Mr. Scheer to preside over a disillusion sale. In the alternative, if the court does not do that, we would ask this court to correct the calculation errors of approximately $11,000 under Section 5-13, small parenthesis 1 of the Arbitration Act. This court, of course, has authority to do that. And remand this case to Mr. Scheer again to enforce the discovery orders and require the defendants to fully account to the plaintiff for his share of cash on hand as of December 31, 07. That should be a very simple matter, Your Honors. And grain and cattle sold from the work performed in 2007, at least the value of grain in the bins and cattle that were around as of the valuation date, in order to do that, he's going to need to force the defendants to make discovery and comply with the prior orders. And for all these reasons, we would ask the court to grant relief as prayed for. Thank you. Thank you, Counselor. You have an opportunity for rebuttal. Mr. Bassett. Good morning. May it please the Court, Mr. Ryan. Bob Bassett here on behalf of James and Joseph Horney with regard to the appeal. I guess the first and foremost point that I want to make in this argument this morning, probably the most important fact is that the parties to this partnership agreement chose arbitration as their selected manner of resolving their disputes, and I think that's very important in this case. I know that this Court has considered arbitration clauses in a number of agreements, and, in fact, in recent years, and I think those have typically been in more of the consumer contracts where there's been a question of, you know, whether a party willingly entered those. Here we have parties who willingly chose arbitration in their partnership agreement, signed off by all of them, and said this is the way we're going to resolve our dispute. Not only that, but when Robert Horney was bought out from the partnership approximately five years before, the parties went through the very same process. They went through an arbitration. They followed the very same methodology that was followed in this case in order to determine Kenneth Horney's partnership share. So I think in that light, it dictates what standard of review this Court is to apply, and I think clearly the manifest disregard of the law is the nature of the review for this Court. The parties bargained for arbitration. They didn't bargain to go to the trial court and then to the appellate court, and I think it's one of the courts that we've discussed in our brief said just because parties chose arbitration doesn't mean they wanted an extra stage in the litigation. And so for that, we would ask that the Court apply the manifest disregard standard to this case. In this case, in talking about the manifest disregard standard, the Court is required to review the arbitrator's decision and to uphold it in any manner possible unless it's illogical, inconsistent, or contains gross errors of law or fact. In this case, arbitrators share a great amount of testimony, reviewed over 60 exhibits. He had supplemental briefing and argument after the arbitration was completed, and he wrote a 17-page, very detailed report, or an award, excuse me. And in that 17-page award, he addressed many of the issues that are presented to this Court. I think as Illinois law provides, he doesn't have to comment on every single issue in his award. In fact, it would be allowable for him under Illinois law just to have made a lump sum award without a discussion of all the issues. But instead, he wrote a 17-page, very well-reasoned award, which should be upheld by this Court. Do you disagree that the plaintiff was locked out in 07 and didn't receive partnership profits from 06 to 08? I agree that he didn't provide any efforts as far as working on the farms during that period of time and that he was not voluntarily given profits for that period of time, Your Honor. So he didn't work, so he didn't get paid. Right. But I think that the arbitrator did allow for that in his award to his court, and he did award him a share of the profits. First, dealing with the dissolution issue, I think that's completely unassailable in this particular instance. Arbitrator Scherr looked at all the issues here in his award. He cites the statutory law that's applicable. He stated the facts and the reasons for why he found the dissolution wasn't necessary. And I think to follow up on the point that you raised with Mr. Ryan, Judge, not only was the business profitable, but Ken Forney's value in the partnership, five years after Robert Forney was bought out, was doubled. Well, how is it profitable if you can't pay your mortgage? I don't know that there was evidence he can't pay it. I think there was evidence he didn't pay it. I think that can be a difference, Your Honor. But in essence, his value of the partnership is doubled five years later. So that clearly shows that it was a going concern, despite the fact that Ken Forney wasn't doing anything to advance the business. In fact, as arbitrator Scherr found, was frustrating to business purposes when he took a check out of their mail and put it into a bank account that was not authorized by the partnership. I think in this instance the dissolution issue was entirely appropriate on the face of the award. Turning to the completeness issue, the arbitrator considered all the matters that were presented to him. For him, for the appellant in this case to expect an arbitrator to answer each and every single issue they might raise, no matter how insignificant, is not required under the law. And I think the judge, in this case arbitrator Scherr, did a fine job in dealing with this. I think the law is clear that when a controversy contains multiple claims, it's not necessary for the arbitrator to show how each particular item was resolved. He specifically found, with regard to the grade issue, and that was brought up earlier by Mr. Ryan, the judge specifically found that the proof failed. That's a decision the judge made based upon his credibility, determinations of the witnesses who were presented, and I think in that respect cannot be disturbed. I would like to point out, when the tenant foreigner is challenging, this award is incomplete. This award is nearly identical to the methodology, and in fact is identical except for maybe one or two respects, to that used when they bought his brother up as a former partner. So it's kind of funny that he advances that methodology when it works in his favor and now complains in this instance. Very same methodology, Your Honor. The tenant has raised a number of issues that they claim were gross errors of law or fact. I don't believe there's any gross errors in this case, Your Honor. The record was complete. Judge Scherr carefully considered all this, and specifically with regard to the indemnity issue that was raised, there was no provision in the partnership agreement to support this indemnity claim that the tenant foreigner is making. There's no provision implicit in the law that he be indemnified in this regard, and to challenge the arbitrator's award in that regard I don't think is an argument that's based either in the facts that were presented in this record or in the law. The appellant has also made claims that there was a breach of fiduciary duty. Judge Scherr specifically found that there was no breach of fiduciary duty and declined or actually denied their counterclaims in all respects, and the counterclaim was both for dissolution and for breach of fiduciary duty. Arbitrator Scherr specifically found that there was no breach based upon his observation of witnesses, review of the exhibits, and the extent of the testimony that he sees and would ask that that not be disturbed in this case. With regard to, and I have to admit, I've never been a CPA and probably not even very good at numbers and hardly do my own checkbook, so when we're looking at the numbers with regard to the two specific issues, the granite grain and the USDA payments, I think on the granite grain check, that's the check that Ken Forney took from the mailbox and deposited into an old separate account, the arbitrator made provision for that, and he got credit for a third of that in the ultimate award. So there's no mathematical calculation in that regard that was done incorrectly. With regard to the USDA payment, I'm not entirely certain, to be honest with you, to be candid with the court on that issue because when the judge is discussing that in his award, he stated that he found that Ken Forney's actions were improper in refusing to sign those documents in order for us to be able to collect the money from the USDA. He then did discuss whether to make an award for two-thirds of that or give two-thirds of credit to my clients in that regard when making the calculation, and I think that's a little more difficult issue when we look at his calculation. But in any event, if the court should find that he made an improper calculation in that specific issue, I think under the Stearns v. Cope case, they hold that we're parts of an award and not in any way dependent upon any other part of the award. It's severable and sustainable in parts. I think that could just be a mere calculation error. Finally, Appellate has made a number of allegations concerning discovery, not producing certain bank statements, ledgers, this sort of thing. The record is clear that all of the ledgers for the farms were produced up to the relevant point in time. Those ledgers contain all of the bank deposits, all of the checks that are signed, and those are the documents that are used by the CPA in preparing the tax returns. I think it's important for this court to keep in mind that the folks that are here involved in this case are gentlemen farmers, okay? They're farmers who are out here working. They're not CPAs and not lawyers, and to hold them, you know, to say that, well, you don't have all the bank deposits, slips, or something like this is a pretty difficult burden. The ledgers were produced. The ledgers contain every item that impacts the farm's financial, and that was testified to by Mr. Simone, who is the CPA of the firm. Unless there are any questions, I would ask that this court affirm the lower court's decision upholding the arbitration award, and I thank you for your time this morning. Thank you, Mr. Bassett. Mr. Ryan, the vote. Thank you. In my 26 years of practice in law, 31 years of coming to this court, I've never heard anybody say that you have to be a lawyer in order to produce a bank statement. You don't have to be a lawyer to do that. You don't have to be a lawyer to produce your grain inventory records, your grain sale records from 07-08 to the other side of litigation. The only reason I would submit to you this intentional non-production is because the defendants knew that it would cost them money in this arbitration if they put forth the full discovery. That is a very weak excuse given by the defense. In terms of the argument that Mr. Bassett opened his argument with, that the parties did sign an arbitration clause in their contract, I couldn't agree more. But just because a litigant signs an arbitration clause doesn't mean that Kenneth Forney is signing away his right to full discovery of the case, full basic discovery. It doesn't mean that as a partner he's signing this right away to a full accounting when there's questionable practices in Judge O'Malley's terms that are involved by the other side. It doesn't mean he's signing this right away to a complete arbitration award to deal with these four things that were left out on the face of the award. And also, he, my client, is not signing away, when he signed that, the Section 801 Uniform Partnership Act right to disillusion whenever the disillusion is called on in mandatory language. Now, also there was a statement made in an argument for the defense that my client did not do any work on the farms in 06. On the face of the award that is rebutted, Mr. Shear awarded my client some salary because the testimony was that my client was able to work, before his knee injury, for two-thirds of the year in 2006. In terms of the reasons why, the only reason why, on the record, the mortgages had been left to develop this large balance, which, as of four years ago, was $253,000. We don't even know what it is now because in 08 no evidence was presented by the defense as to what it's truly owed. James Forney said, quote, lack of money. When I asked him, in the record, well, why do you continue this business that can't pay its bills, he said this, farming is my passion, and I'm not here to keep this man from farming. It's America, the man ought to do what he wants. But the law is, whenever the partners cannot get along and it's not profitable, is the business has to be dissolved, and James and Joseph, if they want to, can pay market prices for their share of the business, and who knows, my client is taking the risk and asking for that, then in this market he might receive less than $945,000 for his next share of all the equipment, et cetera. In terms of the grain issue, Mr. Bassett said, well, the plan didn't prove how much the grain was worth. At least to the satisfaction of Mr. Shearer, we did not. But why is that? He didn't deal with the argument that we made, that we were not able to present the evidence as to how much grain was there, how much had been sold for in 07 already, how much was remaining, how much was sold in 08 from 07, because they intentionally withheld the evidence. And that is the talk that I'd like to leave your honors with. Thank you for your attention to this matter. Thank you, Counsel. The court will take the matter under advisement and render its decision. Thank you.